IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMANDA JOHNSON, an individual; BARRY RICHARDS, an individual; BRIAN LAUFER, an individual; BRYAN HAUXWELL, an individual; DARREN WARNER, an individual; DAVID RUF, an individual; DELMAR RICHTER, an individual; EVAN RICHTER, an individual; HEATH RUF, an individual; JASON BONER, an individual; JERRY KOTSCHWAR, an individual; KENNY KORELL, an individual; KRIS KRESSIN, an individual; LANE BROZ, an individual; RANDY RICHTER, an individual; RICHTER FINANCIAL, INC., a Nebraska corporation; SHAWN SULLIVAN, an individual;  SIS FARMS L.L.C., a Nebraska limited liability company; STEVE BROZ, an individual;  WALLEN AND SONS, INC., a Nebraska corporation; WALLEN FARMS, INC., a Nebraska corporation; and ZAC RICHARDS, an individual; | **4:15CV3083** <br><br> **MEMORANDUM AND ORDER** |
| Plaintiffs, | |
| vs. | |
| THE CLIMATE CORPORATION, a South Carolina corporation;  THE CLIMATE INSURANCE AGENCY LLC, a California limited liability company; and NORTH AMERICAN ELITE INSURANCE COMPANY, a New Hampshire corporation; | |
| Defendants. | |

This matter is before the Court on Defendants The Climate Corporation ("Climate Corp.") and The Climate Insurance Agency, LLC's ("Climate Agency" and collectively, "Climate") Motion to Dismiss (Filing No. 44) and Defendant North American Elite Insurance Company's ("NAE," and with Climate, "the defendants") Motion to Dismiss (Filing No. 46).  The plaintiffs oppose dismissal, and alternatively move for leave "to amend their Complaint to add additional facts and factual specificity" (Filing No. 53).

Having diversity jurisdiction under 28 U.S.C. § 1332(a)(1), the Court grants the Motions to Dismiss in part, denies them in part, and grants the plaintiffs leave to amend the Complaint in accordance with this order.

## I.   BACKGROUND[1]

The plaintiffs are twenty-two agricultural producers who purchased weather insurance policies from one or more of the defendants[2] before the 2013 growing season to cover the plaintiffs' respective agribusiness operations in Nebraska.  NAE developed the policies "based on weather modeling developed by" Climate Corp. to enable agricultural producers like the plaintiffs to reduce the risk of lower yields and crop failure caused by adverse weather, such as inadequate or excessive moisture, heat, and wind.  To recover under the policies, the plaintiffs would not have to show any actual or demonstrable loss of yield.  Rather, if certain specified adverse weather conditions occurred, the plaintiffs would be paid for their loss based on calculations in the policies.

In 2013, each of the plaintiffs' covered properties and crops allegedly suffered a catastrophic drought.  The plaintiffs each filed claims under their policies, but the defendants refused to make full payment.

On July 31, 2015, the plaintiffs filed suit, asserting eight causes of action under Nebraska[3] law: breach of contract, breach of express warranty, unjust enrichment, bad faith, fraudulent inducement, fraudulent misrepresentation, deceptive trade practices, and negligence.  Climate and NAE moved to dismiss the Complaint for failure to state a claim

---

[1]The Court presents "the facts as asserted in [the] complaint and in the light most favorable to" the plaintiffs.  *Key Med. Supply, Inc. v. Burwell*, 764 F.3d 955, 959 (8th Cir. 2014).

[2]The plaintiffs generally refer to the defendants as a group, explaining they "have no specific knowledge regarding the interrelationship between the individual Defendants."

[3]The parties agree Nebraska law governs this diversity action.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).  The plaintiffs maintain the Complaint allegations are sufficient but request leave to amend the Complaint if the Court grants dismissal in whole or in part.  The plaintiffs did not attach an amended complaint to their alternative Motions for Leave to Amend (Filing Nos. 52, 53) as required by NECivR 15.1.

## II.   DISCUSSION

### A.   Legal Standard

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court accepts the plaintiffs' factual allegations—but not their legal conclusions—as true.  *Id.*  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss under Rule 12(b)(6), "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).  Such materials may include "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint"). *Porous Media*, 186 F.3d at 1079 (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1357, at 299 (1990)).

3

B.      **Analysis**

1.      **"Shotgun" and "Kitchen Sink" Pleading**

The defendants raise both global and specific challenges to the Complaint. They first argue the Court should dismiss the Complaint in its entirety because the plaintiffs have engaged in "shotgun" or "kitchen sink" pleading and "make no attempt to differentiate the conduct of the separate defendants." The defendants reject the plaintiffs' repeated assertion that they cannot plead with greater particularity without the benefit of discovery and question whether the plaintiffs adequately investigated their claims before filing suit.[4]  Faulting the plaintiffs for failing to submit "a proper request for leave to amend," the defendants argue "Plaintiffs' Response proves that any amendment would be futile." The defendants urge the Court to deny leave to amend and dismiss the entire Complaint with prejudice.

The defendants' criticisms of the plaintiffs' broad allegations and cursory Motion to Amend are generally well taken. The plaintiffs' assertion that they "have no specific knowledge regarding the interrelationship" between the defendants does not excuse the plaintiffs' failure to attempt to identify each defendant's degree of participation, if any, in the alleged misconduct, nor justify the blanket assertion of every allegation against every defendant. The plaintiffs only relevant defendant-specific allegations are that NAE developed the policies based on weather modeling Climate Corp. developed. The plaintiffs do not make any specific allegations against Climate Agency.

The Court is not convinced the plaintiffs are wholly unable "to separate the conduct of the defendants" or to provide a sufficient factual basis for each of their claims "without the benefit of the discovery process" as they contend. "Rule 8 marks a notable

---

[4]The defendants question the "good faith factual basis" for the plaintiffs' blanket claims under Federal Rule of Civil Procedure 11(b)(3) but do not seek monetary sanctions under subdivision (c).

and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

But the Court is also not convinced the plaintiffs' pleading deficiencies compel dismissing the Complaint as a whole at this point or that amending the Complaint with regard to certain claims would necessarily prove futile. As the defendants point out, the plaintiffs have copies of the insurance policies at issue in this case as well as correspondence related to those policies. They also have first-hand knowledge of the pertinent acts and events underlying their various claims. In the Court's view, the interests of justice are best served in this case by evaluating the defendants' more-specific challenges to the plaintiffs' allegations and granting leave to amend as appropriate to allow the plaintiffs to provide the requisite factual content. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). The Court will address each claim in turn.

## 2.    Breach of Contract

The plaintiffs first assert breach-of-contract claims based on the defendants' alleged failure to pay under the plaintiffs' respective insurance policies. "In order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." *Phipps v. Skyview Farms, Inc.*, 610 N.W.2d 723, 730 (Neb. 2000).

In addition to noting the plaintiffs' failure to differentiate between defendants, the defendants claim the plaintiffs "simply recite the elements of a breach of contract, and do not specify any particular contract requirement or provision breached." The Court agrees the plaintiffs' general references to the policies as a whole without specifying a breach of any particular policy term or provision do not give the defendants fair notice of the grounds for the claims against them. The plaintiffs also have not sufficiently alleged the

5

specific weather events or conditions and related provisions that entitle them to recover under their respective policies.  Unadorned allegations that the plaintiffs were entitled to payment under the policies as a result of "catastrophic drought conditions" and that the defendants failed to pay are insufficient to plausibly state a claim for breach of contract.

The Court grants the plaintiffs leave to amend these claims.

### 3.     Breach of Express Warranty

The plaintiffs next assert breach-of-warranty claims based on "promises and affirmations of fact made by the Defendants through their advertising, marketing and informational meetings."  According to plaintiffs, those "promises and affirmations of fact constitute express warranties, are a part of the basis of the bargain, and are part of the contract between the Plaintiffs and Defendants."

In Nebraska, "an express common-law warranty arises when, to induce a sale, the seller makes a statement of fact representing the quality or character of the thing sold, which statement is reasonably relied upon by the buyer."  *Herman v. Bonanza Bldgs., Inc.*, 390 N.W.2d 536, 542-43 (Neb. 1986).  The plaintiffs allege they "reasonably relied upon the Defendants' representations in purchasing their respective policies" and the defendants breached those expressed warranties by failing to perform.

The defendants argue "any breach of warranty claim should be dismissed based on a provision in each of the policies that expressly disclaims reliance on any representation, warranty, or other assurance."  The defendants point out each policy contains a conspicuous integration clause that provides, in relevant part

> Entire Agreement. This **Policy** (as defined above) constitutes the entire agreement and understanding of the parties with respect to its subject matter. Each of the parties acknowledges that in entering into this **Policy**, it has not relied on any oral or written representation, warranty or other assurance.

6

The defendants contend that "[b]y the terms of the policies themselves, Plaintiffs have conceded that they did not rely on any warranties" and should not be heard to try enforce the favorable terms of their policies while ignoring the warranty disclaimer.[5]

Although the parties do not cite, and the Court has not found, any controlling authority on this issue, the defendants' rationale is in line with the Eighth Circuit's handling of a similar issue in *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 912 (8th Cir. 2002). In *Meehan*, a franchisee sought to recover from a franchisor based his reliance on representations the franchisor allegedly made to induce the franchisee to enter into the franchise agreement. *Id.* at 911-12.

But the franchise agreement contained an express warranty disclaimer that required the franchisee to affirm he had not relied on any express or implied warranties or representations by the franchisor's employees or agents. *Id.* at 912. In affirming prejudicial dismissal, the Eighth Circuit concluded "it is simply unreasonable to continue to rely on representations after stating in writing that you are not so relying." *Id.* (quoting *Hardee's of Maumelle, Ark., Inc. v. Hardee's Food Sys., Inc.*, 31 F.3d 573, 576 (7th Cir. 1994)). That reasoning is persuasive. And the plaintiffs have otherwise failed to plead sufficient factual content to support a "reasonable inference that the defendant[s] [are] liable for" breach of express warranty. *Iqbal*, 556 U.S. 662, 678. The plaintiffs' breach-of-warranty claims are dismissed with prejudice.

### 4.   Unjust Enrichment

As permitted by Nebraska law, the plaintiffs pled claims for unjust enrichment as an alternative to their breach-of-contract claims. *Prof'l Recruiters, Inc. v. Oliver*, 456 N.W.2d 103, 107 (Neb. 1990). "To recover on such a claim, the plaintiff[s] must show

---

[5]The plaintiffs briefly assert this argument raises fact questions about whether the plaintiffs received the disclaimer—questions "best verified" by discovery and addressed at a hearing or trial. But the plaintiffs do not deny having received the warranty disclaimer, and they attached copies of their policies—and the disclaimer—to the Complaint.

that (1) the defendant[s] received money, (2) the defendant[s] retained possession of the money, and (3) the defendant[s] in justice and fairness ought to pay the money to the plaintiff[s]." *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 302 (Neb. 2006).

The defendants argue these claims "should be dismissed because [they] [are] covered by an express contract." The Court agrees with the defendants that the undisputed existence of an express contract governing the dispute between the parties precludes a claim for unjust enrichment. *Washa v. Miller*, 546 N.W.2d 813, 818-19 (Neb. 1996) ("The doctrine of unjust enrichment is recognized only in the absence of an agreement between the parties."). The Court further agrees the defendants cannot be held liable for both breach of contract and unjust enrichment for the same conduct. *Id.* But, the Court does not agree those principles require dismissing the plaintiffs' alternative unjust-enrichment claims at this early stage.

First, there has been no conclusive finding or stipulation, at this point, as to the existence of a "fully defined and enforceable" contract that governs the entire dispute between the parties. *KCK Parks Estate v. Rroadlands, Inc.*, No. A-93-658, 1995 WL 170329, at *8 (Neb. Ct. App. Apr. 11, 1995). Second, the Court questions the defendants' characterization of the plaintiffs' unjust-enrichment claims. The defendants maintain dismissal is required because the plaintiffs "have simply pleaded a breach of contract claim but labeled it a claim for unjust enrichment." In the Complaint, the plaintiffs allege their unjust-enrichment claims are "asserted . . . to the extent the contract and express warranties do not govern the entirety of the subject matter of the dispute with the Defendants." The plaintiffs then seem to seek the return of their premiums if their contract claims fall short. Accepting the plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the Court does not read the plaintiffs' unjust-enrichment claims as "aris[ing] from a breach of written contract" as the defendants assert.

The defendants' motions to dismiss these claims are denied; the plaintiffs are ordered to amend their Complaint to provide a more definite statement as to each defendant's degree of participation, if any, in the alleged misconduct underlying these claims.

### 5. Insurance – Bad Faith

With just three distinct allegations to support their claims, the plaintiffs next allege bad faith based on the defendants' alleged mishandling and ultimate denial of their insurance claims. The plaintiffs' unsupported and conclusory allegations of bad faith fail to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court will grant the plaintiffs leave to amend these claims, again directing them to set forth the factual basis for these bad-faith claims.

### 6. Fraud

The plaintiffs assert two—nearly identical—counts of fraud: fraudulent inducement and fraudulent misrepresentation. "[T]o maintain an action for fraudulent misrepresentation, a plaintiff must allege and prove the following elements: (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff reasonably did so rely; and (6) that the plaintiff suffered damage as a result." *Cao v. Nguyen*, 607 N.W.2d 528, 532 (Neb. 2000).[6]

---

[6]The defendants reasonably question whether fraudulent inducement and fraudulent misrepresentation are separate causes of action under Nebraska law. *See Dominium Ill. Three v. Arbor Dev. Grp., Inc.*, No. A-00-1051, 2002 WL 31056744, at *7 (Neb. Ct. App. Sept. 17, 2002) (applying the elements of fraudulent misrepresentation to a fraud-in-the-inducement claim). The plaintiffs do not answer the question, but both of their fraud claims, though labeled differently, are identical and track the elements for fraudulent

Federal Rule of Civil Procedure 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud."  Those circumstances include "such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).  That is, "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud."  *Id.* (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)).

The plaintiffs do not meet this standard.  Not only do the plaintiffs fail to differentiate between the defendants, they also heavily rely on formulaic restatements of the elements and conclusory allegations that lack the specifics necessary to plead a fraud claim.  *See Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (citation omitted) ("Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.").  For example, the plaintiffs' allegations generally fail to sufficiently identify who made the alleged false representations and when they made them, beyond the occasional vague reference to 2013.  The plaintiffs, with perhaps a few exceptions, also do not sufficiently identify the particular advertising, marketing, and promotional material they allege to be fraudulent.

The Court grants the plaintiffs leave to amend the Complaint in order to plead their allegations of fraud with particularity as required by Rule 9(b).

---

misrepresentation.  It is hard to see how claims so pled constitute separate causes of action.

### 7.     Deceptive Trade Practices

In the Complaint, the plaintiffs asserted a claim for damages under the Nebraska Uniform Deceptive Trade Practices Act (NUDTPA), Neb. Rev. Stat. § 87-301 *et seq.*  As interpreted by the Nebraska courts, the NUDTPA "provides only for equitable relief" and "does not provide a private right of action for damages."  *Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243, 247 (Neb. Ct. App. 2007).  When the defendants pointed that out in their Motions to Dismiss, the plaintiffs responded "the Plaintiffs at this time are electing not to seek injunctive relief to prevent future harm, though such relief may be requested at a later date."  In light of the plaintiffs' response, their NUDTPA claims are dismissed without prejudice.

### 8.     Negligence

The plaintiffs' final claims repackage their contract and fraud claims as "alternative" claims for negligence.  As the plaintiffs see it, the defendants breached their

> duty to develop and utilize weather modeling, upon which the policies of insurance at issue in this case were based, which would permit the policies of insurance to perform as advertised and promised, and to develop policies of insurance consistent with the underlying weather modeling and capable of performing as advertised and promised.

As the defendants point out, the plaintiffs' negligence claims are barred by the economic loss doctrine.  As applied in Nebraska, "the economic loss doctrine precludes tort remedies . . . where . . . the duty which was allegedly breached arose solely from the contractual relationship between the parties."  *Lesiak v. Cent. Valley Ag Co-op., Inc.*, 808 N.W.2d 67, 81 (Neb. 2012); *accord Henriksen v. Gleason*, 643 N.W.2d 652, 657 (Neb. 2002) ("Contract actions, which arise from a breach of a duty imposed on one by an agreement, protect a plaintiff's interest in or right to performance of another's promises.").  Because the plaintiffs' negligence claims allege the defendants breached a duty imposed by the policies, those claims are dismissed with prejudice.

### III.   CONCLUSION

The plaintiffs have not pled sufficient facts to support their claims.  The Court concludes dismissal with prejudice is warranted with respect to two (2) of those claims. While the remaining claims fail to state a claim as now pled, the Court finds the interests of justice are best served with respect to most of those claims by granting the plaintiffs leave to amend the Complaint to provide greater specificity and further factual support. Accordingly,

IT IS ORDERED:

1.   Climate's Motion to Dismiss (Filing No. 44) and NAE's Motion to Dismiss (Filing No. 46) are GRANTED in part and DENIED in part in as follows:

   a.   The plaintiffs' NUDTPA claims are dismissed as to all defendants without prejudice.

   b.   The plaintiffs' breach-of-express-warranty and negligence claims are dismissed as to all defendants with prejudice.

   c.   The Motions to Dismiss are denied at this time in all other respects.

2.   The plaintiffs' Motion for Leave to Amend (Filing No. 53) is GRANTED in part and DENIED in part.  The Court grants the plaintiffs leave to amend their breach-of-contract, unjust-enrichment, bad-faith and fraud claims in accordance with the terms of this Memorandum and Order.

3.   The plaintiffs shall file an Amended Complaint consistent with this Memorandum and Order no later than August 24, 2016.  Failing to comply with this order may result in the dismissal of the Complaint.

Dated this 4th day of August, 2016.

BY THE COURT:

s/ *Robert F. Rossiter, Jr.*
United States District Judge